UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | No. | 4:23cr118 SRC |
| | ) | | |
| v. | ) | | |
| | ) | | |
| JUSTIN G. LAMONDA, M.D., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Justin G. LaMonda, M.D. (the "defendant"), represented by defense counsel Joseph S. Passanise, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I and II of the Information, the Government agrees that no further federal prosecution will be brought in this District relative to the conduct described in the Information, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3. ELEMENTS:

As to Counts I and II, the defendant admits to knowingly violating Title 18, United States Code, Section 1035, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant made a statement or representation in a matter involving a health care benefit program;

**Two,** the statement or representation was in connection with the delivery of or payment for health care benefits, items or services;

**Three,** the statement or representation was material to the health care benefit program;

**Four,** the statement or representation was false, fictitious, or fraudulent; and

**Five,** the defendant made the statement knowingly and willfully.

## 4. FACTS:

2

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### Background

a.     The defendant admits that, at all relevant times, he was a medical doctor and owner of Justin G LaMonda MD, LLC, a family medicine clinic located at 1145 South Morley Street, Moberly, Missouri 65270 (the "Moberly Clinic").

b.     The defendant admits that, at all relevant times, his father, Gary LaMonda ("G. LaMonda"), was a medical doctor and owner of a family medical clinic located at 201 West Broadway, Building 3-D, Columbia, Missouri 65203 (the "Columbia Clinic"). At certain times, G. LaMonda also worked as a medical doctor at the Moberly Clinic, as further and more specifically discussed below. G. LaMonda passed away on September 16, 2021.

c.     The defendant admits that, at all relevant times, he and G. LaMonda, as individuals or through their businesses, submitted and caused to be submitted reimbursement claims to the Medicare and Missouri Medicaid programs, which are "health care benefit programs" as defined by 18 U.S.C. § 24.

### Relevant Medicare Provisions

d.     The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare Program, which reimburses enrolled providers for certain benefits, items, and services provided to elderly and disabled beneficiaries.

*Medicare Part B*

e.      Medicare Part B reimburses health care providers for covered health care services provided to Medicare beneficiaries in outpatient settings.  CMS administers Medicare Part B through its statutory fiscal agents, called Medicare Administrative Contractors or "MACs."  The MACs are private entities that review claims and make payments to providers for services rendered to Medicare beneficiaries.  The MACs are responsible for processing Medicare claims arising within their assigned geographic areas, including determining whether the claim is for a covered service.  Wisconsin Physicians Service Insurance Corporation ("WPS") is the Part B MAC for Eastern Missouri and thus processes reimbursement claims that the defendant and G. LaMonda, as individuals or through their businesses, submitted to Medicare.

f.      To receive Medicare Part B reimbursement, providers must make appropriate application to the MAC and execute a written provider agreement.  The provider agreement obligates the provider to know, understand, and follow all Medicare regulations and rules.  After successful completion of the application process, the MAC assigns the provider a unique provider number, which is a necessary identifier for billing purposes.

g.      The defendant admits that, on or about June 16, 2012, he became enrolled as a Medicare Part B provider.  The defendant further admits that, between 2012 and 2017, he completed and signed several Medicare enrollment applications as an individual provider or on behalf of the Moberly Clinic. Contained in the July 18, 2014 application was Section 14, entitled "Penalties for Falsifying Information," which informed the defendant that he could be criminally prosecuted for (a) executing or attempting to execute a health care fraud scheme or using false or fraudulent statements or representations to obtain money from a health care benefit program or (b) making or using false or fraudulent statements or representations in connection with the

4

delivery or payment for health care benefits, items, or services.

      h.      The defendant admits that, in each Medicare Part B provider application, he signed the "Certification Statement" of the application and thereby certified:

> I have read and understand the Penalties for Falsifying Information as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information...contained in any communication supplying information to Medicare . . . [may be criminally prosecuted].
>
> I agree to abide by the Medicare laws, regulations and program instructions . . . .
>
> I understand that the Medicare identification number issued to me can only be used by me . . . .
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

      i.      The defendant admits that, at all relevant times, G. LaMonda was enrolled as a Medicare Part B provider and authorized to submit claims for payment to the Medicare Part B program.

### *Medicare Part D*

      j.      Medicare Part D is an optional prescription drug benefit program. 42 U.S.C. § 1395w-101(a)(3)(A); 42 C.F.R. § 423.30(a).

      k.      Medicare Part D is based on a private market model. Medicare contracts with private entities known as Part D "Plan Sponsors" to administer prescription drug plans and deliver Part D, *i.e.* prescription, benefits to enrolled beneficiaries. Throughout the year, CMS makes monthly payments to the Part D Plan Sponsor for each Part D beneficiary enrolled in the plan. 42 C.F.R. § 423.329(a)(1).

### **Relevant Medicaid Provisions**

l.      MO HealthNet administers the Missouri Medicaid program, which is jointly funded by the State of Missouri and the federal government. Missouri Medicaid reimburses health care providers for covered services and prescription medications provided to low-income Medicaid recipients.

m.      Some Missouri Medicaid beneficiaries have the option of enrolling in Missouri Medicaid Managed Care Organization health plans. Managed Care Organizations ("MCOs") are private entities, such as UnitedHealthcare, that contract with Missouri Medicaid to provide additional benefits and services to beneficiaries. Throughout the year, they receive monthly payments for each beneficiary from Missouri Medicaid.

n.      The Missouri Medicaid Audit and Compliance Unit ("MMAC") is a subpart of the of the Missouri Medicaid program that detects and prevents fraud, waste, and abuse, and recovers improperly expended Medicaid funds.

o.      A Medicaid provider must enter into a written agreement with MO HealthNet to receive reimbursement for medical services to Medicaid recipients and must agree to abide by MO HealthNet's regulations in rendering and billing for those services.

p.      The defendant admits that, effective on or about January 1, 2013, he became enrolled as a Missouri Medicaid provider. The defendant further admits that, on or about July 30, 2013, the MMAC notified him that he was required to use his own billing number when submitting claims for payment to the Missouri Medicaid program.

q.      The defendant admits that, at all relevant times until on or about July 29, 2021, G. LaMonda was enrolled as a Missouri Medicaid provider and authorized to submit claims for payment to the Missouri Medicaid.

6

## Current Procedural Terminology (CPT) Codes

r.      In seeking reimbursement for services from health care benefit programs, health care providers use numeric codes, known as "CPT Codes," to describe the services they provide. The CPT codes are contained in the Physicians Current Procedural Terminology manual. The CPT manual is published by the American Medical Association and its body of physicians of every specialty, who determine appropriate definitions for the codes. CPT codes are part of the Healthcare Common Procedure Coding System produced by CMS to facilitate the processing of health insurance claims. By submitting claims using CPT codes, providers represent to the insurance companies and their patients that the services described by the codes were in fact provided.

s.      Reimbursement rates for the CPT codes are set through fee schedules, which establish the maximum amount that the provider will be paid for a given service, as identified by the CPT code program.

## The Defendant's Loss of Medicare and Medicaid Privileges

t.      The defendant admits that, effective August 10, 2017, the Missouri Board of Registration for the Healing Arts ("MBRHA")—the agency responsible for licensing, disciplining, and regulating Missouri physicians—suspended his medical license based on allegations that, among other things, he had engaged in sexual activity with his practice's office manager, to whom he had also prescribed controlled substances without sufficient medical examination and outside of the usual course of professional practice. The defendant further admits that the suspension on his medical license lasted until September 13, 2017, because he

7

completed a "professional boundaries" course, which limited his suspension period to 30 days pursuant to the terms of his settlement agreement with the MBRHA.

u.     The defendant admits that, effective December 20, 2018, WPS revoked his Medicare Part B privileges after determining that he had submitted claims to Medicare for reimbursement of services conducted during the period when his medical license was suspended.

v.     The defendant admits that, in a letter dated September 12, 2019, the MMAC notified him that, based on his Medicare revocation, it was terminating his Medicaid provider number beginning on the earlier of the date of the letter's delivery or thirty days from the date of the letter's mailing.

### Falsely Representing G. LaMonda as the Provider on Claims for Services Conducted by the Defendant and on Orders for Durable Medical Equipment and Tests Written by the Defendant

*Overview*

w.     The defendant admits that, beginning at least as early as on or about December 20, 2018, he and G. LaMonda decided to bill Medicare for services conducted by the defendant (who lacked Medicare Part B billing privileges) as if they had been conducted by G. LaMonda (who still had Medicare Part B billing privileges).

x.     The defendant admits that, when he later lost his Missouri Medicaid billing privileges, he and G. LaMonda expanded the scope of their fraudulent representations to include claims for payment submitted to Missouri Medicaid, as well.  The defendant specifically admits that he and G. LaMonda billed Missouri Medicaid for services conducted by the defendant (who lacked Missouri Medicaid billing privileges) as if they had been conducted by G. LaMonda (who still had Missouri Medicaid billing privileges).

8

*False Representations from December 20, 2018 to June 30, 2019*

y.      The defendant admits that, beginning at least as early as on or about December 20, 2018, G. LaMonda worked at the Moberly Clinic on Mondays, Wednesdays, and Fridays, and on Tuesdays and Thursdays, G. LaMonda continued to work at the Columbia Clinic. The defendant admits that, as a result, beginning at least as early as on or about December 20, 2018, he was the only medical doctor present at the Moberly Clinic on Tuesdays and Thursdays.

z.      The defendant admits that he and G. LaMonda agreed that, on Tuesdays and Thursdays, the defendant would continue to conduct medical visits with Medicare beneficiaries even though his Medicare billing privileges had been revoked. The defendant further admits that, after such examinations of Medicare beneficiaries, the defendant used, and instructed his billing personnel to use, G. LaMonda's unique billing provider number on claims for payment for such examinations and related services, which thereby falsely represented to Medicare that G. LaMonda was the performing provider for services that were, in actuality, performed by the defendant.

aa.      The defendant admits that, in connection with conducting medical visits with Medicare beneficiaries after his billing privileges had been revoked, he frequently issued prescriptions for medications to Medicare beneficiaries, who had those prescriptions filled at pharmacies. The pharmacies, in turn, often submitted claims for payment for those prescriptions to Medicare Part D Plan Sponsors, which received monthly payments from Medicare for each beneficiary enrolled in their plans. The defendant admits that, in this way, Medicare reimbursed the Medicare Part D Plan Sponsors for prescriptions that the defendant wrote premised on medical examinations that he falsely billed under G. LaMonda's name.

9

bb.     The defendant admits that he and G. LaMonda further agreed that if the defendant, after conducting an examination of a Medicare beneficiary, decided to refer the beneficiary to another health care provider for outside services (such as laboratory testing or radiographic imaging), the defendant would use, and instruct his staff to use, G. LaMonda's name as the ordering provider on the referral for outside testing.  The defendant admits that, by naming G. LaMonda as the ordering provider on referrals for outside services, the defendant falsely represented that a Medicare-enrolled provider, to wit, G. LaMonda, had ordered the outside services.  The defendant further admits that Medicare ultimately paid for such outside services pursuant to claims for payment that falsely named G. LaMonda as the referring provider.

cc.     The defendant similarly admits that he and G. LaMonda agreed that if the defendant, after conducting an examination of a Medicare beneficiary, decided to order durable medical equipment ("DME") for the beneficiary, the defendant would use, and instruct his staff to use, G. LaMonda's name as the ordering provider on the DME order form.  The defendant admits that by naming G. LaMonda as the ordering provider on orders for DME, the defendant falsely represented that a Medicare-enrolled provider had ordered the DME.  The defendant further admits that Medicare ultimately paid for such DME pursuant to claims for payment that falsely named G. LaMonda as the ordering provider.

### *Continuation of False Representations After June 30, 2019*

dd.     The defendant admits that, on or about June 30, 2019, G. LaMonda stopped working at the Moberly Clinic altogether and, therefore, the defendant was the only medical doctor present on any given day of the week.  The defendant further admits that, after that time,

10

on any given day of the week, the defendant continued to (1) use G. LaMonda's name and billing number on claims to Medicare for services that he himself conducted, as described in paragraph z, above; (2) prescribe medications to Medicare beneficiaries, who often had those prescriptions filled at pharmacies that submitted claims for payment to Medicare Part D Plan Sponsors, as described in paragraph aa, above; (3) use G. LaMonda's name on referrals for outside services that he himself made for Medicare beneficiaries, as described in paragraph bb, above; and (4) use G. LaMonda's name on orders for DME that he himself ordered for Medicare beneficiaries, as described in paragraph cc, above.

### *Falsely Representing G. LaMonda as the Provider on Claims Submitted to Missouri Medicaid after October 12, 2019*

ee.     The defendant admits that, beginning at least as early as on or about October 12, 2019, he and G. LaMonda expanded their fraudulent misrepresentations to include claims for payment submitted to Missouri Medicaid.  The defendant specifically admits that he continued to conduct medical visits with Missouri Medicaid beneficiaries, and, after such medical visits, the defendant used, and instructed his billing personnel to use, G. LaMonda's unique billing provider number on claims for payment for such examinations and related services.  The defendant admits that, in so using G. LaMonda's unique billing number, he falsely represented to Missouri Medicaid that G. LaMonda—who still had Missouri Medicaid billing privileges—was the performing provider for services that were, in actuality, performed by the defendant—who then lacked Missouri Medicaid billing privileges.

ff.     The defendant admits that, in connection with conducting medical visits with Missouri Medicaid beneficiaries after his billing privileges had been revoked, the defendant

11

frequently issued prescriptions for medications to Missouri Medicaid beneficiaries, who had those prescriptions filled at pharmacies. The defendant admits that the pharmacies, in turn, often submitted claims for payment for those prescriptions to Missouri Medicaid, which thereby paid for prescriptions that the defendant wrote premised on medical examinations that he falsely billed under G. LaMonda's name.

gg.    The defendant admits that he used, and instructed his staff to use, G. LaMonda's name as the ordering provider on referrals for outside services (such as laboratory testing or radiographic imaging) on referrals that the defendant himself made for Missouri Medicaid beneficiaries. The defendant admits that, by naming G. LaMonda as the ordering provider on referrals for outside services, the defendant falsely represented that a Missouri Medicaid-enrolled provider had ordered the outside services. The defendant further admits that Missouri Medicaid ultimately paid for such outside services pursuant to claims for payment that falsely named G. LaMonda as the referring provider.

### *Payments from G. LaMonda to the Defendant*

hh.    The defendant admits that, at all relevant times, Medicare Part B and Missouri Medicaid directed reimbursements to G. LaMonda or the Columbia Clinic for claims for services that used G. LaMonda's unique billing number and listed G. LaMonda as the performing provider.

ii.    The defendant admits that, as a result, G. LaMonda paid the defendant for services the defendant performed for Medicare Part B and Missouri Medicaid beneficiaries while lacking billing privileges with those programs and while falsely submitting claims for those services using G. LaMonda's name and billing number.

12

***Counts I and II***

jj.     The defendant admits that, on or about the dates listed below, within the Eastern District of Missouri, he knowingly and willfully made and used materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services involving the Medicare Part B and the Missouri Medicaid programs, both of which are health care benefit programs as defined in 18 U.S.C. § 24(b), in violation of 18 U.S.C. § 1035, in that the defendant falsely stated and represented in medical records and claims for payment that G. LaMonda had provided medical services to the below-identified beneficiary, when the defendant then and there well knew said statements and representations were false, fictitious, and fraudulent, in that the defendant, not G. LaMonda, provided medical services to the below-identified beneficiary:

| Count | Patient/ Beneficiary | Date of Service | Claim Submission Date | CPT Code | Amount Billed | Amount Paid | Payor |
|-------|----------------------|-----------------|------------------------|----------|----------------|-------------|-------|
| I | M.R. | 10/8/2019 | 10/14/2019 | 99213 | $90.00 | $52.78 | Medicare Part B |
| II | M.R. | 10/8/2019 | 10/30/2019 | 99213 | $14.02 | $14.02 | Missouri Medicaid |

***Loss***

kk.     As a result of the conduct described in paragraphs a through ll, above, the defendant admits and the parties stipulate that he caused a total loss amount of $537,322.20, as further described below:

13

i.     The defendant caused a total loss of $59,960.70 in claims to Medicare Part B that falsely named G. LaMonda as the performing provider when, in fact, the defendant was the performing provider and lacked Medicare Part B billing privileges.

ii.     The defendant caused a total loss of $169,563.59 in services and DME paid for by Medicare Part B pursuant to the defendant's orders for such services and DME that falsely named G. LaMonda as the ordering provider while the defendant lacked Medicare Part B billing privileges.

iii.     The defendant caused a total loss of $376.44 in claims to a Missouri Medicaid MCO (namely, UnitedHealthcare) that falsely named G. LaMonda as the performing provider when, in fact, the defendant was the performing provider and lacked Missouri Medicaid billing privileges.

iv.     The defendant caused a total loss of $11,583.04 in services paid for by Missouri Medicaid pursuant to the defendant's referrals for outside services that falsely named G. LaMonda as the ordering provider while the defendant lacked Missouri Medicaid billing privileges.

v.     The defendant caused a total loss of $294,623.11 in Medicare Part D prescriptions that he issued in connection with visits he conducted with Medicare beneficiaries and falsely billed under G. LaMonda's name while the defendant lacked Medicare Part B billing privileges.

vi.     The defendant caused a total loss of $1,215.32 in Missouri Medicaid prescriptions that he issued in connection with visits he conducted with Missouri beneficiaries

14

and falsely billed under G. LaMonda's name while the defendant lacked Missouri Medicaid billing privileges.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty as to both Counts I and II is imprisonment of not more than five years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

**6. U.S. SENTENCING GUIDELINES (2021 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level for Counts I and II is 6, as found in Section 2B1.1. The parties agree that Counts I and II should be grouped pursuant to Section 3D1.2.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: The parties agree that 12 levels should be added pursuant to Section 2B1.1(b)(1)(G) because the loss exceeds $250,000, but does not exceed $550,000.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated

15

acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2)  Other Adjustments:**  The parties agree that the following additional adjustments apply:

The parties agree that 2 levels should be added, pursuant to Section 3B1.3, because the defendant abused a position of public trust.

**c.  Other Adjustment(s)/Disputed Adjustments:**  None.

**d.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 17.

**e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any

16

Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office**: The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.    These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.    The defendant understands that parole has been abolished.

18

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the

19

defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $537,322.20. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a

20

reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

21

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

\*\*\*\*\*\*\*\*\*\*\*\*REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK\*\*\*\*\*\*\*\*\*\*\*

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring

2/9/2023
Date

AMY E. SESTRIC, #66219MO
Assistant United States Attorney

2-8-2023
Date

JUSTIN G. LAMONDA, M.D.
Defendant

2/8/2023
Date

JOSEPH PASSANISE
Attorney for Defendant

23